IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. CHRISTOPHER ROBERT SMITH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-A-421     Steve R. Dozier, Judge**

---

**No. M2001-02297-CCA-R3-CD - Filed September 27, 2002**

---

The appellant, Christopher Robert Smith, was convicted in the Criminal Court of Davidson County of conspiracy to possess with the intent to manufacture, deliver or sell 300 grams or more of any substance containing cocaine, a Class A felony. The trial court sentenced the appellant to twenty-four years incarceration in the Tennessee Department of Correction and imposed a fifty thousand dollar ($50,000) fine. On appeal, the appellant complains that the evidence was insufficient to support his conviction and that his sentence was excessive. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Jay Norman, Nashville, Tennessee, for the appellant, Christopher Robert Smith.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman and Tammy Meade, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

On February 3, 2000, members of the Twentieth Judicial District Drug Task Force were conducting an investigation of apartment number 1402 at the Cameron Overlook Apartments in Nashville. The apartment was later discovered to be leased to the appellant and his co-defendant, Christopher Agee. The officers began surveillance of the apartment around 9:00 p.m. Sergeant James McWright parked in front of the apartment building where he could observe the parking lot and breezeway to the apartment. Officer Aaron Thomas parked in the rear of the apartment and had a direct visual on the door of the apartment. Other officers assisted in the surveillance by following persons entering and leaving the apartment.

At 9:38 p.m., the officers observed Shannon Adams arrive at the apartments in a red Mitsubishi and enter apartment 1402. Approximately twenty minutes later, Adams left the apartment and Officer Dannie Eddings followed her to Bailey's Sports Bar. When Adams arrived at Bailey's, a white male came out of the bar and got into Adams' vehicle. The male exited the vehicle after a few minutes and went back inside the bar. Adams then left Bailey's and returned to apartment 1402. Five minutes later, Adams again left the apartment and drove to Bailey's where she met with another male in a Ford Probe. After the meeting ended, Adams returned to the apartment.

Over an hour after Adams' return, officers observed the appellant, Agee and two other co-defendants, Scot Murphree and Scott Chase, leave the apartment. Agee had in his possession a white cloth bag. Agee and Murphree approached a silver Honda Civic and Agee placed the white bag in the vehicle's trunk. Murphree got into the Civic while Agee got into a red low-rider pick-up truck. Murphree then left the apartments in the Civic and the officers followed him to a nearby Kroger parking lot.

Meanwhile, Chase got into a maroon Honda Accord and pulled it into a parking space directly in front of the breezeway to apartment 1402. After the vehicle was parked, Sergeant McWright observed Chase place something into the trunk of the maroon Accord. Chase then got into a black Lexus driven by the appellant, and the Lexus and the red truck proceeded to the Kroger parking lot where they picked up Murphree and drove away, leaving the Civic in the parking lot. Sergeant McWright followed the suspects to Bailey's, after which the officer lost sight of the suspects for ten to fifteen minutes.

While McWright followed the suspects to Bailey's, "Vice K-Nine" arrived at the Kroger parking lot.[1] After sniffing the vehicle, the drug dog made a positive indication that the Civic contained narcotics. The officers decided to wait for the suspects to return to Kroger before searching the Civic. When Agee and Murphree returned, the officers advised them that the dog had indicated the presence of drugs in the Civic and asked for permission to search the vehicle.[2] Inside the trunk, the officers found drugs and drug paraphernalia inside a shaving kit and discovered the white bag Agee had earlier placed in the trunk. A search of the white bag revealed over 800 grams of cocaine and sixty thousand dollars cash ($60,000). Agee and Murphree were immediately arrested.

About this time, Officer Eddings, who had assumed Sergeant McWright's surveillance position at the apartments, advised the officers at the Kroger parking lot that Adams was leaving the apartment. Officer Eddings followed Adams to Kroger where Sergeant McWright stopped Adams and walked the drug dog alongside Adams' red Mitsubishi. The dog made a positive identification for narcotics on the front passenger side and a search revealed a silver handbag

---

[1]     "Vice K-Nine" is the unit in which officers are teamed with dogs trained to identify or "sniff-out" the presence of narcotics.

[2]     It is not clear from the record whether the officers obtained consent to search the vehicle; however, the appellant did not raise the issue in his motion to suppress.

containing cocaine and eight hundred dollars cash ($800). Shortly thereafter, Officer Eddings, who had returned to the apartments, advised Sergeant McWright that Chase and the appellant were leaving the apartment in the maroon Accord. Upon receiving this information, Sergeant McWright ordered the officer to arrest the remaining suspects. Officer Eddings and Officer Thomas arrested Chase and the appellant and transported them to the Kroger parking lot, leaving the black Lexus and maroon Accord at the apartments. The officers later had the Lexus towed, but searched the Accord to determine what Chase had earlier placed in the trunk. The officers found four thousand, four hundred and four dollars cash ($4404) inside the trunk.

While in custody at the Kroger parking lot, the appellant asked to speak alone with Sergeant McWright. The appellant confessed to Sergeant McWright that the cocaine and money belonged to him and Agee and that his girlfriend, Adams, had nothing to do with the drugs. The appellant informed Sergeant McWright that he was the "big man" and that he never sold anything smaller than ounces. The appellant admitted to selling eight to ten ounces at a time and to flying to San Antonio, Texas, to pick up kilos of cocaine. Sergeant McWright testified that he was not questioning the appellant at this time, but that the appellant was speaking freely in an effort to avoid the arrest of his girlfriend. The appellant offered to set up his supplier in San Antonio if Sergeant McWright would not arrest Adams.

While speaking with Sergeant McWright, the appellant also agreed to allow the officers to search the apartment he shared with Agee. However, he stated that there was nothing in the apartment because "I got everything out." The appellant told Sergeant McWright that he and Adams had gotten into a fight earlier that evening and he was worried she would contact the police; therefore, he had decided to place the cocaine and the money in the Civic and leave the vehicle in the Kroger parking lot. However, when the officers conducted a search of the apartment, they discovered a cocaine grinder on a headboard in the bedroom. The officers also found records of illegal drug sales on the kitchen counter, along with a "kilogram wrapper" with cocaine residue and markings typical of drug packaging material. The appellant's fingerprint was found on the "wrapper."

Based upon the foregoing facts, the jury found the appellant guilty of conspiracy to possess with the intent to manufacture, deliver or sell 300 grams or more of any substance containing cocaine. As a result of the conviction, the trial court sentenced the appellant to twenty-four years incarceration and imposed a fine of fifty thousand dollars ($50,000). On appeal, the appellant challenges the conviction and sentence.

## II. Analysis

A. Sufficiency of the Evidence

The appellant first complains that there was insufficient evidence to sustain his conviction of conspiracy to possess with the intent to manufacture, deliver or sell 300 grams or more of any substance containing cocaine. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is

insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). When an appellant challenges the sufficiency of the convicting evidence, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

In order to sustain a conviction in this case, the State was required to prove at trial that the appellant knowingly possessed, or conspired to possess, with the intent to manufacture, deliver or sell 300 grams or more of any substance containing cocaine. Tenn. Code Ann. § 39-17-417(j)(5) (1997). The offense of conspiracy is committed when

> two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a) (1997).

In the instant case, the appellant admitted to Sergeant McWright that the cocaine and the money belonged to him and Agee. He bragged that he was the "big man" and never sold anything smaller than ounces. The appellant also admitted to traveling to San Antonio, Texas, to pick up kilos of cocaine. Moreover, he offered to set up his supplier if Sergeant McWright agreed not to arrest his girlfriend, Adams, for the drugs found in her vehicle. Additionally, the officers observed the appellant's roommate, Agee, carrying the cocaine from their apartment and placing it into the Civic from which it was later confiscated. When the officers searched the apartment that the appellant shared with Agee, the officers discovered records of drug dealing, as well as drug paraphernalia, including a cocaine grinder used to grind blocks of cocaine into smaller quantities to be sold. Finally, the officers found a "kilo wrapper" on the kitchen counter with the appellant's fingerprint on it.

The appellant argues that the only evidence of his actual possession of the cocaine "came from [his] own mouth" and that his confession was made for the sole purpose of preventing the arrest of his girlfriend. The appellant then points out that, under prior decisions of this court, a confession alone is insufficient to sustain a conviction absent corroborating evidence. The appellant argues that the only other evidence linking him to the crime consists of his fingerprint on a "kilo wrapper" found in the apartment he shared with Agee and Agee's possession of the cocaine when leaving the apartment on the night of their arrest. According to the appellant, the "wrapper" does not substantiate the commission of the crime, because "it is not apparent nor proven as to what quantity of cocaine may have been wrapped inside the paper, if any." Therefore, the appellant argues, the evidence is "insufficient for a rational trier of fact to find beyond a reasonable doubt that he was guilty of conspiracy to possess three hundred grams or more of a substance containing cocaine."

-4-

In Tennessee, it is a well-established principle of law that a conviction cannot be founded solely upon a defendant's confession. State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000) (citing Ashby v. State, 139 S.W. 872, 875 (Tenn. 1911)). Some corroborating evidence is required which, independently of the confession, tends to establish the *corpus delicti* of the offense charged. Id. However, where there is a confession, the corroborative evidence "need not be as convincing as the evidence necessary to establish a *corpus delicti* in the absence of any confession." Ricketts v. State, 241 S.W.2d 604, 606 (Tenn. 1951). The corroborating evidence is sufficient to sustain a conviction if "it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration." Id. Furthermore, we note that all elements of the *corpus delicti* may be established by circumstantial evidence. State v. Jones, 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999).

As previously stated, the appellant admitted that the cocaine and the money belonged to him and Agee. He bragged that he was the "big man" and dealt only in large quantities of cocaine. However, this confession was not the only evidence connecting the appellant to the crime. The officers testified that they observed the appellant's roommate carrying the cocaine from the appellant's apartment and a search of the apartment uncovered records of drug dealing, drug paraphernalia, and a "kilo wrapper" with the appellant's fingerprint on it. Because this additional evidence tends to connect the appellant with the offense, the evidence is sufficient to corroborate the appellant's confession and, thus, to sustain the conviction. This issue is without merit.

B. Sentencing

The appellant next contends that the trial court erred in sentencing the appellant to a term of twenty-four years imprisonment. When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appellant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2001). See also Ashby, 823 S.W.2d at 168.

The presumptive sentence for a Class A felony is the midpoint in the statutory range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds that there are enhancement or mitigating factors, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then

reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). There is no mathematical formula for valuating factors to calculate the appropriate sentence. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

Conspiracy to possess with the intent to manufacture, deliver or sell 300 grams or more of any substance containing cocaine is a Class A felony. Tenn. Code Ann. § 39-17-417(j). The appropriate range of punishment for a Class A felony is fifteen to twenty-five years; accordingly, the presumptive sentence is twenty years. Tenn. Code Ann. § 40-35-112(a)(1) (1997). In the instant case, the trial court did not find any statutory mitigating factors to be present, but it did consider as a mitigating factor that the appellant had no prior record. However, the trial court afforded this factor minimal weight "because everyone is presumed to be law-abiding citizens, or should be law-abiding citizens, and have a good work history." In terms of enhancement factors, the trial court found that the appellant was a leader in the conspiracy, stating "that the proof at this trial indicated that [the appellant] was a leader in this particular offense and that it did involve two or more criminal actors." Based on these factors, the trial court sentenced the appellant as a Range I offender to twenty-four years and imposed a fifty thousand dollar ($50,000) fine.[3]

The appellant argues that being sentenced at the upper end of the applicable range based upon one enhancing factor "undermines the principle that the sentence should be the least severe measure necessary to achieve the purpose for which the sentence was imposed." The appellant submits that a twenty-one year sentence would be more appropriate. However, as previously noted, the weight to be afforded an enhancement factor is left to the trial court's discretion so long as the court complies with the purposes and principles of sentencing and its findings are adequately supported by the record. Boggs, 932 S.W.2d at 475-76. Based on the proof at trial, including the appellant's own admission to Sergeant McWright that the appellant was the "big man," the trial court found that the appellant was a leader in the offense. Clearly, neither the trial court nor the jury believed that the appellant confessed for the sole purpose of preventing the arrest of his girlfriend. The trial court's decision is proper given the discretion allowed a trial court in sentencing. Id.

The appellant also asserts in his brief that "the trial Court in sentencing the appellant apparently put great significance on the fact that he was not a street dealer but a major supplier," which is not a statutory enhancement factor and, therefore, cannot be used to enhance the length of the appellant's sentence. State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993); Tenn. Code Ann. § 40-35-114 (Supp. 2001). However, the appellant misconstrues the trial court's language in sentencing appellant. The trial court stated that

---

[3] On April, 23, 2001, the appellant waived his constitutional right to have a fine in excess of fifty dollars ($50) imposed by the jury and agreed to have the trial court impose the fine.

. . . it's not a situation where Mr. Smith, or these other individuals that have now all - the others have pled guilty, were standing out on the street corner selling twenty-cent pieces and making three-or-four-hundred dollars a day.

He's the one supplying the drugs to [the street dealers], that leads to the drive-by shootings, that leads to everybody fighting over their turf, leads to people getting ripped off in drug activity on the street corner. He's the person, here in Nashville, that sets all that in motion . . . [and] has involved his girlfriend at the time and two or three other people.

This court does not interpret the trial court's remarks to signify that the trial court was using the fact that the appellant was dealing in a large quantity of cocaine as an additional enhancement factor. Rather, this language indicates the factual basis underlying the trial court's belief that the appellant was a leader in the commission of this crime. Therefore, this argument is without merit.

### III. Conclusion

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
NORMA McGEE OGLE, JUDGE

-7-